## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES CLIFFORD LILLEY, | ) | Case No. 10-81078 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JAMES CLIFFORD LILLEY, | ) | Adv. Pro. No. 10-09110 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WELLS FARGO, N.A., | ) | |
| OPTION ONE MORTGAGE LOAN TRUST | ) | |
| 2007-5 ASSET BACKED CERTIFICATE, | ) | |
| LOAN LEADERS OF AMERICA, INC., | ) | |
| RIGHT-AWAY MORTGAGE, INC., | ) | |
| FIDELITY NATIONAL TITLE COMPANY, | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., AND | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| SERVICING, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS WELLS FARGO, N.A. AND AMERICAN HOME MORTGAGE SERVICING, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Wells Fargo, N.A., as Trustee for Option One Mortgage Loan Trust 2007-5 Asset Backed Certificates, Series 2007-5 (the "Trust") and American Home Mortgage Servicing, Inc., Servicer for the Trust ("AHMSI") (collectively "Defendants"), hereinafter, by and through their undersigned attorneys, answer the Complaint ("Complaint") herein as follows:

## FIRST DEFENSE
### (RESPONSE TO NUMBERED PARAGRAPHS)

Defendants, denying all allegations of the Complaint not specifically admitted herein, hereby respond as follows to the numbered allegations of the Complaint:

1. The allegations contained in paragraph 1 of the Complaint are legal conclusions to which no response is required.

2. The allegations contained in paragraph 2 of the Complaint are legal conclusions to which no response is required.

3. The allegations contained in paragraph 3 of the Complaint are legal conclusions to which no response is required.

4. Defendants admit the allegations contained in paragraph 4 of the Complaint.

5. Wells Fargo admits that it is a national banking association incorporated under the laws of the United States. Wells Fargo also admits that its main office, as designated in its articles of association, is located in Sioux Falls, South Dakota. Wells Fargo further admits that it is listed as Trustee for Option One Mortgage Loan Trust 2007-5 as stated in paragraph 5 of the Complaint. All remaining allegations of paragraph 5 of the Complaint are denied.

6. It is admitted that Option One Mortgage Loan Trust Asset Backed Certificates, Series 2007-5, is a mortgage trust formed and operating under the laws of the State of Delaware, and that Option One Mortgage Loan Trust Asset Backed Certificates, Series 2007-5 is the holder of the Note executed by the Plaintiff, James C. Lilley, on December 8, 2006.

7. The allegations contained in paragraph 7 of the Complaint are not directed toward Defendants and therefore do not require a response. To the extent a response is required, the Deed of Trust is a writing and the best evidence of its contents. To the extent the allegations of paragraph 7 differ from or contradict the writing, they are denied.

8. The allegations contained in paragraph 8 of the Complaint are not directed toward Defendants and therefore do not require a response. To the extent a response is required, the Deed of Trust is a writing and the best evidence of its contents. To the extent the allegations of paragraph 8 differ from or contradict the writing, they are denied.

9. The allegations contained in paragraph 9 of the Complaint are not directed toward Defendants and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of the Complaint, and therefore deny the same.

10. The allegations contained in paragraph 10 of the Complaint are not directed toward Defendants and therefore do not require a response. To the extent a response is required, the Note and Deed of Trust are writings and the best evidence of their contents. To the extent the allegations of paragraph 10 differ from or contradict the writing, they are denied.

11. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 11 of the Complaint, and therefore deny the same.

12. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 12 of the Complaint, and therefore deny the same.

13. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 13 of the Complaint, and therefore deny the same.

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 14 of the Complaint, and therefore deny the same.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 15 of the Complaint, and therefore deny the same.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 16 of the Complaint, and therefore deny the same.

17.     It is admitted that the signature of Plaintiff appears on numerous documents dated December 8, 2006, and that those documents appear to have been notarized by James E. Lewis. The documents referenced in paragraph 17 of the Complaint are writings and the best evidence of their contents.  To the extent the allegations of paragraph 17 differ from or contradict the writings, they are denied.

18.     The allegations contained in paragraph 18 of the Complaint are legal conclusions to which no response is required.  Should a response be required, the Deed of Trust is a writing and the best evidence of its contents.  To the extent the allegations of paragraph 18 differ from or contradict the writing, they are denied.

19.      Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 19 of the Complaint, and therefore deny the same.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 20 of the Complaint, and therefore deny the same.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 21 of the Complaint, and therefore deny the same.

22.      It is admitted that on January 28, 2008, the Plaintiff contacted AHMSI and advised that the homeowner's insurance policy was in the name of Nancy Cook.  It is further admitted that on or about January 31, 2008, Plaintiff contacted AHMSI and was advised that the Plaintiff's name needed to be added to the homeowner's policy.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 22 of the Complaint, and therefore deny the same.

23.     It is admitted that on or about January 31, 2008, AHMSI advised the Plaintiff that the Plaintiff's name needed to be added to the homeowner's policy.  Except as specifically admitted, the allegations contained in paragraph 23 of the Complaint are denied.

24.     The allegations contained in paragraph 24 of the Complaint are not directed toward Defendants and therefore do not require a response.  To the extent a response is required, the Quitclaim Deed is a writing and the best evidence of its contents.  To the extent the allegations of paragraph 24 differ from or contradict the writing, they are denied.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 25 of the Complaint, and therefore deny the same.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 26 of the Complaint, and therefore deny the same.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 27 of the Complaint, and therefore deny the same.

28.     The allegations contained in paragraph 28 of the Complaint are legal conclusions to which no response is required.  Should a response be required, the Deed of Trust is a writing and the best evidence of its contents.  To the extent the allegations of paragraph 28 differ from or contradict the writing, they are denied.

29.     The allegations contained in paragraph 29 of the Complaint are legal conclusions to which no response is required.  Should a response be deemed required, Defendants deny each and every allegation contained in paragraph 29 of the Complaint.

RESPONSE TO "PRAYER FOR RELIEF"

Plaintiff's "Prayer for Relief" section of the Complaint is not an allegation and therefore no response is required.  Should a response be deemed required, Defendants deny each and every allegation in the Prayer for Relief of Plaintiff's Complaint.

FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

The Complaint fails to identify AHMSI as a party, and it fails to allege any cause of action or factual allegation against AHMSI and therefore fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

The Complaint fails to join a necessary party.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by his own fraud, and Defendants assert the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by his own contributory negligence.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because, in the event the Deed of Trust is otherwise adjudicated to be defective or deficient in any manner (which remains specifically denied), AHMSI is entitled to an equitable lien and equitable mortgage on the Property that is the subject of the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because, in the event the Deed of Trust is otherwise adjudicated to be defective or deficient in any manner (which remains specifically denied), then the Property was held by the Debtor subject to a trust, including, without limitation, a resulting and/or constructive trust, in favor of Defendants on the Property that is the subject of the Complaint, and as such the Property in question is trust property and not property of the estate.

## EIGHTH AFFIRMATIVE DEFENSE

While it is unclear whether or not the Plaintiff seeks to use the hypothetical status of a bona fide purchaser, to the extent the Plaintiff does, the Plaintiff cannot qualify as a hypothetical "bona fide purchaser of real property" under 11 U.S.C. § 544(a)(3) with respect to the Property that is the subject of the Complaint, the Deed of Trust having been recorded in the Durham

County Register of Deeds index, which would put a reasonably diligent searcher on constructive notice of the interest of Defendants in the Property. Moreover, it is well established under North Carolina law that there is a duty of inquiry imposed by law upon any prospective purchaser, including the Plaintiff in his hypothetical capacity.

## NINTH AFFIRMATIVE DEFENSE

Defendants restate and reallege the above paragraph. Should Defendants be declared to have no lien or trust upon the Property that is the subject of its Deed of Trust, then Defendants would have no remedy at law against the Property. Without such a lien on the Property, the Plaintiff would be unjustly enriched at Defendants' expense. As a result of such unjust enrichment, an equitable lien arises by implication against the Property. Equity demands that Defendants receive an equitable lien on the Property.

## TENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to assert additional affirmative defenses as they become known.

Defendants incorporate any applicable affirmative defense or other defense asserted by any other defendant in this action. Defendants will rely on all defenses that may become available during discovery or trial.

## **COUNTERCLAIM**

NOW COMES Wells Fargo, N.A., as Trustee for Option One Mortgage Loan Trust 2007-5 Asset Backed Certificates, Series 2007-5 (the "Trust") and American Home Mortgage Servicing, Inc., Servicer for the Trust ("AHMSI") (collectively, "Counterclaimants"), and allege the following as their Counterclaim against Plaintiff James Clifford Lilley:

## PARTIES, JURISDICTION AND VENUE

1. Wells Fargo Bank, N.A. is a national banking association incorporated under the laws of the United States with its main office, as designated in its articles of association, located in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. is the Trustee for Option One Mortgage Loan Trust 2007-5 Asset Backed Certificates, Series 2007-5.

2. Option One Mortgage Loan Trust 2007-5 Asset Backed Certificates, Series 2007-5 is a mortgage trust formed and operating under the laws of the State of Delaware, and is the holder of the Note and Deed of Trust at issue in this action.

3. AHMSI is a corporation organized and existing under the laws of the State of Delaware and is the Servicer for Wells Fargo, N.A., as Trustee for Option One Mortgage Loan Trust 2007-5 Asset Backed Certificates, Series 2007-5.

4. Upon information and belief, the Plaintiff is a resident and citizen of the State of North Carolina.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334.

## BACKGROUND

6. On December 8, 2006, Plaintiff executed a Uniform Residential Loan Application seeking a conventional loan in the amount of $77,000 (the "Loan Application"). A true and accurate copy of the Loan Application is attached hereto and incorporated herein as Exhibit A.

7. The Loan Application provides, on page 3 at Section VI, that the Plaintiff owned real property at 2921 Intercross Road, Durham, North Carolina 27704, with a present market value of $110,000.

~#4826-4965-8888 v.1~

8.　Plaintiff entered into an Adjustable Rate Note (the "Note") with Right-Away Mortgage, Inc., on December 8, 2006, in the amount of $77,000. The Note also contained a Balloon Note Addendum of the same date.

9.　On December 8, 2006, Plaintiff signed a Notice of Right to Cancel (the "Notice") acknowledging and representing that the transaction he was entering into would result in a mortgage, lien or security interest in his home located at 2921 Intercross Road, Durham, North Carolina (the "Subject Property").　Plaintiff signed and dated said Notice on December 8, 2006.

10.　A Deed of Trust (the "Deed of Trust"), dated December 8, 2006, was executed by the Plaintiff securing real property located at 2921 Intercross Road, Durham, North Carolina for the Note entered into by Plaintiff of even date, and is recorded in Book 5778, Page 773-792, Durham County Register of Deeds.　A true and accurate copy of the Deed of Trust is attached hereto and incorporated herein as Exhibit B.

11.　The Deed of Trust provides, on page 3 of 14, as follows:

> BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.　Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

12.　The Deed of Trust further provides, at section 9, in relevant part:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**.　If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture . . . ), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to:　. . . (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . .

~#4826-4965-8888 v.1~

Any amounts disbursed under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

13.     On December 8, 2006, a North Carolina Quitclaim Deed (the "Quitclaim Deed") was executed by Nancy B. Cook, individually and as Administratrix of The Estate of Willie Edgar Broughton, conveying title to the Subject Property by Nancy B. Cook, individually and as Administratrix of The Estate of Willie Edgar Broughton, as Grantor, to James C. Lilley, as Grantee.

14.     The Quitclaim Deed is a valid and enforceable Quitclaim Deed, duly executed by the Administratrix of said estate and recorded in Book 5778, Page 769-772, Durham County Register of Deeds.

15.     Plaintiff held legal title to the Subject Property at the time the Note and Deed of Trust were entered into by the Plaintiff as evidenced by the executed Quitclaim Deed conveying title in the Subject Property to the Plaintiff and as evidenced by the Durham County Property records.

16.     Plaintiff continues to hold title to the Subject Property as evidenced by the Durham County Property records and the Plaintiff's liability for property taxes acknowledged in his chapter 13 plan.

17.     Even if the Plaintiff did not hold legal title to the Property at the time the Note and Deed of Trust were entered as Plaintiff alleges in his Complaint, which is denied, Plaintiff represented in writing by signing the Loan Application and the Deed of Trust that he held legal title to the Subject Property at the time the Note and Deed of Trust were entered into by the Plaintiff.

18.     Wells Fargo, N.A., as Trustee for Option One Mortgage Loan Trust 2007-5 Asset Backed Certificates, Series 2007-5, is the holder of the Note and Deed of Trust pursuant to a series of endorsements of the note.

### FIRST CAUSE OF ACTION

19.     The allegations in Paragraphs 1 through 18 of the Counterclaim are realleged and incorporated herein by reference.

20.     If the Plaintiff did not hold legal title to the Property at the time the Note and Deed of Trust were entered as Plaintiff alleges in his Complaint, which is denied, the Plaintiff knew that he did not hold legal title to the Property when he executed the Loan Application and the Deed of Trust and that the representations in the Loan Application and Deed of Trust that he was lawfully seised of the Property were false.

21.     If the Plaintiff did not hold legal title to the Property at the time the Note and Deed of Trust were entered as Plaintiff alleges in his Complaint, which is denied, the Plaintiff knew that the Defendants would rely upon his representation in the Loan Application and the Deed of Trust that he was lawfully seised of the Property in extending the loan.

22.     After relying on the Plaintiff's representation in the Loan Application and the Deed of Trust that he was lawfully seised of the Property, the Defendants extended to the Plaintiff a loan in the amount of $77,000.

23.     If the Plaintiff did not hold legal title to the Property at the time the Note and Deed of Trust were entered as Plaintiff alleges in his Complaint, which is denied, the Loan Application and the Deed of Trust were material misrepresentations in writing with respect to the financial condition of the Plaintiff.

~#4826-4965-8888 v.1~

24.    The loan to Plaintiff was obtained by false pretenses, false representations, and actual fraud and is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B) and 1328(a)(2).

   **WHEREFORE**, having fully answered the Complaint of the Plaintiff and set out their Counterclaim, Defendants pray:

1.    That the Court dismiss the Plaintiff's Complaint with prejudice;

2.    That the Court enter judgment in favor of Defendants AHMSI and the Trust against Plaintiff on all Plaintiff's claims;

3.    That the Court enter an order finding that the debt owed to the Defendants AHMSI and the Trust by the Plaintiff is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B) and 1328(a)(2);

4.    That the costs of this action be taxed to the Plaintiff; and

5.    For such other relief as the Court finds just and equitable.

   Respectfully submitted this, the 28th day of January, 2011.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Pamela W. McAfee*
   Pamela W. McAfee
   N.C. State Bar No. 21096
   E-mail: pam.mcafee@nelsonmullins.com
   Kelli Goss Hopkins
   N.C. State Bar No. 36824
   E-mail: kelli.hopkins@nelsonmullins.com
   4140 Parklake Avenue, Suite 200
   GlenLake One / Second Floor
   Raleigh, North Carolina 27612
   Telephone; (919) 877-3800
   Facsimile: (919) 877-3799

*Attorneys for Defendants Wells Fargo Bank, N.A., as Trustee*
*for Option One Mortgage Loan Trust 2007-5 Asset Backed*

*Certificates, Series 2007-5 and American Home Mortgage Servicing, Inc.*

~#4826-4965-8888 v.1~

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true copy of the foregoing document was served on the parties indicated below by depositing copies thereof in a depository under the exclusive care and custody of the United States Postal Service in postage prepaid envelopes designating delivery by First Class Mail and properly addressed as follows:

*Bankruptcy Administrator:*
Michael D. West
P.O. Box 1828
Greensboro, NC 27402

*Chapter 13 Trustee:*
Richard M. Hutson, II
Chapter 13 Office
302 East Pettigrew St., Suite B-140
P. O. Box 3613
Durham, NC 27702

*Debtor / Plaintiff:*
James Clifford Lilley
2921 Intercross Road
Durham, NC 27704

*Counsel for Debtor / Plaintiff:*
Koury Lee Hicks, Esquire
The Law Offices of John T. Orcutt
Suite D
1738 Hillandale Road
Durham, NC 27705

*Defendant:*
Mortgage Electronic Registration Systems, Inc.
1818 Liberty Street
Suite 300
Reston, VA 20190

*Defendant:*
Loan Leaders of America, Inc.
c/o Martin Foigelman
3 MacArthur Place
Suite 650
Santa Ana, CA 92707

*Defendant:*
Right-Away Mortgage, Inc.
10833 Valley View Street
Suite 500
Cypress, CA 90630

*Counsel for Defendant Fidelity National Title Group:*
William C. Smith, Jr.
Manning Fulton & Skinner, P.A.
3605 Glenwood Ave., Suite 500
P.O. Box 20389
Raleigh, NC 27619-0389

This 28th day of January, 2011.

*/s/ Pamela W. McAfee*
Pamela W. McAfee

# EXHIBIT A


CREDIT / 1003 APPLICATION

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA | [x] Conventional | [ ] Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | FHA | | USDA/Rural Housing Service | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | [ ] Fixed Rate | [ ] Other (explain): |
|---|---|---|---|---|---|
| $ 77,000.00 | 7.390 % | 360 | | [ ] GPM | [x] ARM (type): 2YR |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | | No. of Units |
|---|---|---|
| 2921 INTERCROSS ROAD, DURHAM, NC 27704 | | |

| Legal Description of Subject Property (attach description if necessary)  SEE PRELIM | Year Built |
|---|---|
| | 0 |

| Purpose of Loan | [ ] Purchase | [ ] Construction | [ ] Other (explain): | Property will be: |
|---|---|---|---|---|
| | [x] Refinance | [ ] Construction-Permanent | | [x] Primary Residence  [ ] Secondary Residence  [ ] Investment |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| 1991 | $ 0.00 | $ 0.00 | Cash-Out/Debt Consolid | Cost: $ 0.00 |

| Title will be held in what Name(s)  JAMES C LILLEY | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | PER TITLE | [x] Fee Simple  [ ] Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)  EQUITY |
|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable)  JAMES C. LILLEY | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | (919) 683-1168 | 01/04/1947 | 14 | | | | |

| [ ] Married [x] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) no. 0  ages | [ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [ ] Own [x] Rent  10 No. Yrs. | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent  No. Yrs. |
|---|---|
| 2921 INTERCROSS ROAD  lived with family rent free  DURHAM, NC 27704 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent  No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer [ ] Self Employed | Yrs. on this job | Name & Address of Employer [ ] Self Employed | Yrs. on this job |
| LEE'S TELEPHONE ENTERPRISE, INC  PO BOX 477  Townsville, NC 27584 | 18  Yrs. employed in this line of work/profession  25 | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business  MANAGER | Business Phone (incl. area code)  (252) 492-3552 | Position/Title/Type of Business | Business Phone (incl. area code) |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer [ ] Self Employed | Dates (from - to) | Name & Address of Employer [ ] Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer [ ] Self Employed | Dates (from - to) | Name & Address of Employer [ ] Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

200028378
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
Wolters Kluwer Financial Services
VMP®-21N (0507).03
Page 1 of 4
Initials: _____

Case 10-09110    Doc 18    Filed 01/28/11    Page 17 of 40

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 2,752.00 | $ | $ 2,752.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 0.00 | $ 500.47 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 0.00 | 52.08 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 0.00 | 51.30 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: Flood Ins. | 0.00 | 0.00 |
| Total | $ 2,752.00 | $ 0.00 | $ 2,752.00 | Total | $ 0.00 | $ 603.85 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.    Completed [ X ] Jointly [ ] Not Jointly

| ASSETS<br>Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | DISCOVER FIN SVCS LLC | [132.00] | [5,903.00] |
| Name and address of Bank, S&L, or Credit Union | | PO BOX15316 | 45 | |
| | | ATT:CMS/P | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | BB T | 6.00 | 1,028.00 |
| | | PO BOX 1847 | 172 | |
| | | WILSON, NC 27894 | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | CAPITAL 1 BK | 32.00 | 585.00 |
| | | PO BOX 85015 | 19 | |
| | | RICHMOND, VA 23285-5075 | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | ACS | [56.00] | [56.00] |
| | | 421 FAYETTEVILLE ST MALL | 1 | |
| | | RALEIGH, NC 27601 | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | STATE OF NC | [0.00] | [1,344.00] |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 0.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 110,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 38.00 | |
| Total Assets a. | $ 110,000.00 | Net Worth (a minus b) ▶ $ 108,387.00 | Total Liabilities b. | $ 1,613.00 |

200028378
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP®-21N (0507).03
Page 2 of 4
Initials _____

## VI. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2921 INTERCROSS RD | | | | | | | |
| DURHAM, NC 27704 | 00 SFR | $ 110000 | $ 93500 | $ 0 | $ 0 | $ 220 | $ 0 |
| | | | | | | | |
| | Totals $ | 110000 | $ 93500 | $ 0 | $ 0 | $ 220 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 0.00 |
| e. Estimated prepaid items | 0.00 |
| f. Estimated closing costs | 7,920.81 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 7,920.81 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 77,000.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 77,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -69,079.19 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X (signature) | 12/8/06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | X I do not wish to furnish this information | CO-BORROWER | I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | Hispanic or Latino / Not Hispanic or Latino | Ethnicity: | Hispanic or Latino / Not Hispanic or Latino |
| Race: | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White | Race: | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White |
| Sex: | Female / X Male | Sex: | Female / Male |

| To be Completed by Interviewer | Name and Address of Interviewer's Employer |
|---|---|
| Interviewer's Name (print or type): CLEVELAND PAYNE | LOANLEADERS OF AMERICA, INC |
| Interviewer's Signature / Date | 2081 BUSINESS CENTER DR, STE #150 |
| Interviewer's Phone Number (incl. area code): (949) 655-1515 | IRVINE, CA 92612 |

This application was taken by:
- [ ] Face-to-face interview
- [ ] Mail
- [X] Telephone
- [ ] Internet

VMP®-21N (0507) 03   Page 3 of 4   200028378

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

# EXHIBIT B



**2007048541**

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2007 OCT 25 01:33:09 PM
BK:5778 PG:773-792 FEE:$68.00
NS:$25.00
INSTRUMENT # 2007048541

# DEED OF TRUST

This Instrument Prepared By:

*Dallas Anderson*

*83 1075646*

~~After Recording Return To:~~
~~RIGHT-AWAY MORTGAGE, INC.~~
~~10833 VALLEY VIEW STREET, STE 500~~
~~CYPRESS, CALIFORNIA 90630~~
Loan Number: 200028378

MIN: 1003506-2000283780-4

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

*41447703-02*

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 8, 2006 , together with all Riders to this document.
(B) "Borrower" is JAMES C. LILLEY

Borrower is the trustor under this Security Instrument.
(C) "Lender" is RIGHT-AWAY MORTGAGE, INC.

Lender is a TEXAS CORPORATION organized
and existing under the laws of TEXAS
Lender's address is 10833 VALLEY VIEW STREET, STE 500, CYPRESS,
CALIFORNIA 90630

(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY
7700 IRVINE CENTER DRIVE #960, IRVINE, CALIFORNIA 92618

---

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS DocMagic eForms 800-649-1362
Form 3034 1/01 Page 1 of 14 www.docmagic.com

Nc3034l.mzd.1.tem

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated     DECEMBER 8, 2006
The Note states that Borrower owes Lender     SEVENTY-SEVEN THOUSAND AND 00/100
                  Dollars (U.S. $  77,000.00          ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JANUARY 1, 2037

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☒ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Second Home Rider
☐ Condominium Rider          ☐ Other(s) [specify]

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "Escrow Items" means those items that are described in Section 3.

**(N)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Nc3034Z.mzd.2.tms

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the

<table>
<tr><td>COUNTY</td><td>of</td><td>DURHAM</td></tr>
<tr><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td></tr>
</table>

_____ Judicial District:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 169433

which currently has the address of

2921 INTERCROSS ROAD
[Street]

DURHAM , North Carolina 27704 ("Property Address"):
[City] [Zip Code]

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in

Nc3034.mtd.3.tem

one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS DocMagic *eFormas* 800-649-1362
Form 3034 1/01                                                  Page 4 of 14                                            www.docmagic.com

Nc30344.mzrd.4.item

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Nc30345.mzd.5.tem

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  DocMagic *Forms* 800-649-1362
Form 3034 1/01                                     Page 6 of 14                                                    www.docmagic.com

Nc3034.mzd.6.tem

Case 10-09110    Doc 18    Filed 01/28/11    Page 26 of 40

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  *DocMagic* €Ferms 800-649-1362
Form 3034 1/01
Page 7 of 14
www.docmagic.com

Nc30347.mzd.7.tem

Case 10-09110   Doc 18   Filed 01/28/11   Page 27 of 40

designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums

NC3034B.mzd.8.tem

secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  *DocMagic eFormss* 800-649-1362
Form 3034 1/01                                      Page 9 of 14                                              *www.docmagic.com*

Nc30340.mzd.9.tem

Case 10-09110    Doc 18    Filed 01/28/11    Page 29 of 40

prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

Nc303410.mzd.10.xem

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS DocMagic *€Forms* 800-649-1362
Form 3034 1/01                                    Page 11 of 14                                    www.docmagic.com

Nc3034l1.mzd.11.tem

Case 10-09110    Doc 18    Filed 01/28/11    Page 31 of 40

promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of       5.000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** Attorneys' fees must be reasonable.

Nc303412.mzd.12.ims

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
JAMES C. LILLEY                 -Borrower                                                  -Borrower


_____ (Seal)                    _____ (Seal)
                                -Borrower                                                  -Borrower


_____ (Seal)                    _____ (Seal)
                                -Borrower                                                  -Borrower


JAMES E. LEWIS
NOTARY PUBLIC
DURHAM COUNTY
STATE OF NORTH CAROLINA

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic *eForms* 800-649-1362
Form 3034 1/01                              Page 13 of 14                                         www.docmagic.com

Nc303413.mzd.13.tem

STATE OF:
North Carolina,
DURHAM                              County

   I.    JAMES E. Lewis                    , do certify that JAMES C. LILLEY

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this the   8TH   day of   Dec   2006

```
+------------------------------+
|      JAMES E. LEWIS          |
|      NOTARY PUBLIC           |
|      DURHAM COUNTY           |
|    STATE OF NORTH CAROLINA   |
+------------------------------+
```

                (Seal)

_____
Notary Public

My commission expires: 2/26/11

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic *Forms* 800-649-1362
Form 3034 1/01                          Page 14 of 14                                www.docmagic.com

Nc303414.mzd.14.tem

Case 10-09110    Doc 18    Filed 01/28/11    Page 34 of 40

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th day of DECEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to RIGHT-AWAY MORTGAGE, INC., A TEXAS CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

2921 INTERCROSS ROAD, DURHAM, NORTH CAROLINA 27704
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of        7.390 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A)    Change Dates
The interest rate I will pay may change on the 1st day of JANUARY, 2009 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                         Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Case 10-09110    Doc 18    Filed 01/28/11    Page 35 of 40

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 890/1000                      percentage points (    5.890  %) to the Current Index.  The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.390  % or less than      7.390  %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                     percentage points (       1.000  %) from the rate of interest I have been paying for the preceding       6       months.  My interest rate will never be greater than 14.390  %.  My interest rate will never be less than      7.390  %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                              Page 2 of 3

DocMagic *eFsorms* 800-649-1362
www.docmagic.com

Us31382.nmn.2.tcm

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JAMES C. LILLEY                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

JAMES E. LEWIS
NOTARY PUBLIC
DURHAM COUNTY
STATE OF NORTH CAROLINA

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3138l.oom.3 tem

# BALLOON RIDER

Loan Number: 200028378

Servicing Number:

Date: DECEMBER 8, 2006

    This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

    The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

    Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


_____ (Seal)
JAMES C. LILLEY                 -Borrower

_____ (Seal)
                                -Borrower


_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower


_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

JAMES E. LEWIS
NOTARY PUBLIC
DURHAM COUNTY
STATE OF NORTH CAROLINA

MULTISTATE BALLOON RIDER
03/27/06

DocMagic *eForms* 800-649-1362
www.docmagic.com

## EXHIBIT A

Beginning at a stake on the west side of the new bypass for Route 15 at W.E.
Broughton's present northeast corner, and running thence with Broughton's
line North 68 degrees 19 minutes West 468 feet to a stake; thence with Tilley's
new line South 81 degrees 15 minutes East 422 feet to a stake; thence with
another now line of Tilley South 8 degrees 34 minutes East 138 feet to a stake,
point of BEGINNING, containing .47 acres, more or less, and being that property
shown on the plat of the property of W.E. Broughton, dated March 4, 1957, and
recorded in Plat Book 33, page 4, Durham County Registry, to which reference is
hereby made for a more particular description.



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

| | |
|---|---|
| **Filed For Registration:** | **10/25/2007 01:33:09 PM** |
| **Book:** | **RE  5778 Page: 773-792** |
| **Document No.:** | **2007048541** |
| | **D-T  20 PGS  $68.00** |
| **NS:** | **$25.00** |
| **Recorder:** | **SHARON M CEARNEL** |



2007048541